**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Scottsdale Insurance Company, an Ohio corporation, | Civil No. 07-2674 (DWF/AJB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Westurn Cedar, Inc., an Oregon corporation; Westurn Cedar Supply, L.L.L.P., a Minnesota Limited Liability Partnership; Westurn Cedar Supply Inc., a Minnesota Corporation; Timberline Shake & Shingle Company, an Oregon Corporation; Westurn Roofing & Supply, LLC, a Colorado Limited Liability Company; Westurn Cedar Supply Company (Washington), Inc., a Washington Corporation; Northface Exteriors, Inc., a Minnesota Corporation; Westurn Custom Roofing of Illinois, LLC, an Illinois Limited Liability Company; Custom Roofing & Sheet Metal, LLC, F/K/A Westurn Roofing Chicago, LLC, a Minnesota Limited Liability Company; Westurn Cedar Roofing, LLC, a Nebraska Limited Liability Company; and Westurn Roofing & Siding, LLC, a North Dakota Limited Liability Company, | |
| Defendants. | |

Dean S. Rauchwerger, Esq., and Kenneth R. Wysocki, Esq., Clausen Miller PC; and Joel W. Zylstra, Esq., and Tony R. Krall, Esq., Hanson Lulic & Krall, LLC, counsel for Plaintiff.

Alan J. Sheppard, Esq., Sheppard Law Office, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on a Motion for Summary Judgment brought by

Plaintiff Scottsdale Insurance Company ("Scottsdale"). For the reasons stated below, the Court grants Scottsdale's motion.

## BACKGROUND

Scottsdale provides insurance services, including but not limited to, issuing Commercial General Liability ("CGL") policies. The Defendants are a group of companies that operate in the construction and roofing contracting business.[1] All of the Defendants (or "Westurn entities") are or were under common ownership and control.

Scottsdale issued four separate insurance contracts covering the Westurn entities during the time period from 2001 through 2004. The first policy, Policy No. BCS0001095, was in effect from February 20, 2001 to February 20, 2002 (the "2001 Policy"). (Decl. of Terry Parsons ("Parsons Decl.") ¶ 9, Ex. 1.) The 2001 Policy names Westurn Cedar, Inc. as the First Named Insured. The Schedule of Named Insureds lists Westurn Cedar, Inc.; Timberline Shade and Shingle Co. [sic]; Westurn Roofing & Supply, LLC; Westurn Cedar Supply of WA, Inc.; Northface Cedar Exsteriors, Inc. [sic]; and Custom Roofing & Sheer Metal, LLC [sic], as additional insureds. Change Endorsement No. 12 to this policy also lists Westurn Cedar Supply, Inc.; Timberline Shake & Shingle Co.; Westurn Roofing & Supply, LLC; Westurn Cedar Supply Company (Washington), Inc; Northface Cedar Exsteriors, Inc. [sic]; Westurn Custom Roofing of Illinois, LLC and Westurn Roofing, Chicago, LLC; Westurn Cedar Roofing, LLC; and Westurn Roofing & Siding, LLC, as Named Insureds.

---

[1] Westurn Cedar Supply, Inc. is the only defendant entity still in existence.

The second policy, Policy No. BCS0002832, was in effect from February 20, 2002 to February 20, 2003 (the "2002 Policy").  (Parsons Decl. ¶ 10, Ex. 2.)  The 2002 Policy names Westurn Cedar Supply, LLLP as the First Named Insured.  The Schedule of Named Insureds lists Westurn Cedar Supply, LLLP; Westurn Cedar, Inc.; Westurn Custom Roofing of Illinois LLC; Westurn Roofing & Supply, LLC; Wester [sic] Roofing & Siding, LLC; and Westurn Cedar Roofing, LLC, as additional insureds.  Change Endorsement No. 4 to this policy also lists Westurn Cedar Supply, Inc., Westurn Cedar, Inc., Westurn Custom Roofing of Illinois LLC, Westurn Roofing & Supply, LLC, Westurn Roofing & Siding, LLC, and Westurn Cedar Roofing, LLC, as Named Insureds.

The third policy, Policy No. BCS00051252, was in effect from February 20, 2003 to February 20, 2004 (the "2003 Policy").  (Parsons Decl. ¶ 11, Ex. 3.)  The 2003 Policy names Westurn Cedar Supply, LLLP as the First Named Insured.  Change Endorsement No. 2 to this policy also lists Westurn Cedar Supply, Inc.; Westurn Cedar, Inc.; Westurn Custom Roofing of Illinois LLC; Westurn Roofing & Supply, LLC; Westurn Roofing & Siding, LLC; and Westurn Cedar Roofing, LLC, as Named Insureds.

The fourth policy, Policy No. BCS0007555, was in effect from February 20, 2004 to March 24, 2005 (the "2004 Policy").  (Parsons Decl. ¶ 12, Ex. 4.)  The 2004 Policy names Westurn Cedar Supply, LLLP as the Named Insured.

All four policies contain a $5,000 deductible per claimant to reimburse Scottsdale for the first $5,000 incurred to investigate, settle, or defend any claim made against an

insured entity.  Each of the insurance policies contains the following language regarding the $5,000 deductible:

> [Scottsdale] may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

(Parsons Decl. ¶ 8.)  The insurance policies also contain the following language regarding the definition of "you":

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

(Parsons Decl. ¶¶ 9-12, Exs. 1-4.)

During the time period that the Defendants were insured by Scottsdale, numerous claims were submitted to Scottsdale.  Scottsdale accepted and defended each claim.  In offering a defense, Scottsdale paid for counsel to represent the insured entities, paid all related legal and loss adjustment expenses, and paid settlements that were reached.  Defendants made Deductible Reimbursement payments totaling $192,135.92.  At some point in 2005, Defendants stopped making deductible payments.  Scottsdale continues to accept and defend new claims.  Scottsdale now moves for summary judgment, asserting that Defendants have breached their contracts by failing to reimburse Scottsdale for all deductibles due.

**DISCUSSION**

**I.       Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enter. Bank*, 92 F.3d at 747.  The nonmoving party must demonstrate the existence of specific facts in the record, which create a genuine issue for trial.  *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The interpretation and construction of an insurance contract is a question of law.  *Haarstad v. Graff*, 517 N.W.2d 582, 584 (Minn. 1994).  The interpretation of insurance

contracts is governed by general principles of contract law. *Illinois Farmers Ins. Co. v. Glass Serv. Co.*, 683 N.W.2d 792, 799 (Minn. 2004) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)). When the contract language is unambiguous, the Court gives the language its plain and ordinary meaning. *Id*.

The contract language in all four relevant insurance policies contains unambiguous language regarding the reimbursement of deductible amounts. In particular, each insurance contract explicitly requires that the Named Insured reimburse Scottsdale for the first $5,000 that Scottsdale spends per claimant. There is no dispute that as of March 31, 2008, the Westurn entities' obligations to Scottsdale under the insurance policies totaled $943,041.27 and that the Westurn entities had paid only $192,135.92 of that amount.

Scottsdale brought the present action alleging a single cause of action for breach of contract. Scottsdale now moves for summary judgment. As part of that motion, Scottsdale requests that the Court find that the amount owed by Defendants to Scottsdale, as of March 31, 2008, is $750,905.35 and to enter judgment in that amount. Scottsdale also requests a finding that Defendants have a continuing obligation to reimburse Scottsdale for the first $5,000 of any payments Scottsdale makes due to Scottsdale's on-going duties under the applicable insurance contracts.

Defendants do not dispute the existence of the insurance contracts, that the contracts required payment of a $5,000 deductible, and that all deductibles have not been paid. In addition, Defendants do not dispute the amount of unpaid deductibles. However, Defendants assert that Westurn Cedar Supply, Inc., the only entity still in operation, is not

responsible for the unpaid deductibles because the unpaid balance is the responsibility of other Named Insureds that are no longer in business.  Defendants further assert that there is no joint and several liability under the contracts and that the Westurn entities are separate and distinct operations, each responsible for the insurance claims arising from its respective operation.

The record demonstrates that Scottsdale entered into the contract for insurance services with Westurn Cedar, Inc. (the 2001 Policy) and Westurn Cedar Supply, LLLP (the 2002 Policy, 2003 Policy, and 2004 Policy).   Westurn Cedar Supply, LLLP was made a Named Insured on the 2001 contract via Change Endorsement No. 9.  The record establishes, therefore, that the policies were issued to Western Cedar Supply, LLLP.  Westurn Cedar Supply, Inc. succeeded to the assets and liabilities of Westurn Cedar Supply, LLLP.[2]  (Aff. of Thomas Balkins ("Balkins Aff.") ¶ 2.)  Thus, Westurn Cedar Supply, Inc., assumed Westurn Cedar Supply, LLLP's legal obligations under the policies.  These responsibilities include the obligation, as a Named Insured, to pay deductibles.[3]

---

[2]   Westurn Cedar Supply began as a Minnesota limited partnership in 1985 and became a Minnesota LLLP in May 2000.  Westurn Cedar Supply, LLLP was dissolved in December 2001.  Westurn Cedar Supply, Inc. was formed as a Minnesota corporation on February 21, 2001, and succeeded to the partnership's assets and liabilities on January 1, 2002.

[3]   Scottsdale asserts that Defendants' argument that they should not be held jointly and severally liable is irrelevant because the policies were issued to Westurn Cedar Supply, Inc., the only named insurer that still exists.  Defendants do not dispute this.  Scottsdale argues, in the alternative, that the Defendants should be held jointly and severally liable because the Defendants assumed each others' debts regarding the policies.

Defendants assert that the individual Western entities, and in particular Westurn Cedar Supply, Inc., should not be responsible for the insurance claims arising from claims made against separate insured entities. The Court disagrees. For each relevant time period, Scottsdale issued a single insurance policy and was paid a single premium. These policies were issued to Westurn Cedar Supply, Inc. (or its predecessors), who in turn is presumably paying the policy premiums.[4] Even though the Western entities may be separately incorporated, the Westurn entities were not issued separate policies. Instead, the separate entities were incorporated into the single policy through Change Endorsements. As discussed above, Westurn Cedar Supply, Inc. is responsible for the deductible payments under those policies.[5]

Based on the record before it, the Court finds that no reasonable fact finder could conclude that Western Cedar Supply, Inc. is not contractually obligated to pay deductibles under the policies for claims made against insured entities.

---

In support, Scottsdale points to record evidence demonstrating that Westurn Cedar Supply, Inc. made itself responsible for the deductible reimbursement payments that were made to Scottsdale. Because the Court finds that Westurn Cedar Supply, Inc. is legally responsible for deductible payments under the terms of the contracts and without regard to joint and several liability, the Court need not reach the issue of whether joint and several liability exists.

[4]  Under all four policies, the First Named Insured is responsible for the payment of all premiums.

[5]  This conclusion is underscored by the fact that Westurn Cedar Supply, Inc. paid virtually all previous deductible payments—totaling nearly $200,000—from its bank account, regardless of the insured against which the underlying claim was asserted. This demonstrates that Westurn Cedar Supply, Inc. considered itself responsible for the deductible payments.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Scottsdale's Motion for Summary Judgment (Doc. No. 29) is **GRANTED**.

    a. As of March 31, 2008, Westurn Cedar Supply, Inc. is liable to Scottsdale in the amount of $750,905.35.

    b. Westurn Cedar Supply, Inc. has a continuing obligation to reimburse Scottsdale for deductible payments under the applicable insurance policies.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 31, 2008                     s/Donovan W. Frank
                                         DONOVAN W. FRANK
                                         Judge of United States District Court